```
DSS:CAC
F.#2009R01526
```

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - -X

UNITED STATES OF AMERICA

    - against -                         10 CR 68 (S-2)(SJ)(SMG)

ANTHONY TUOZZO,

            Defendant.

- - - - - - - - - - - - - - - - - -X

THE GOVERNMENT'S MEMORANDUM IN OPPOSITION TO THE
DEFENDANT'S OBJECTIONS TO THE
<u>MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION</u>

                                        LORETTA E. LYNCH
                                        United States Attorney
                                        Eastern District of New York
                                        271 Cadman Plaza East
                                        Brooklyn, New York 11201

Celia A. Cohen
Assistant U.S. Attorney
    (Of Counsel)

PRELIMINARY STATEMENT

The defendant, Anthony Tuozzo, is charged in the superseding indictment with (1) one count of Hobbs Act robbery conspiracy in violation of Title 18, United States Code, Section 1951(a) (Count Three), (2) one count of Hobbs Act robbery in violation of Title 18, United States Code, Section 1951(a) (Count Four) and (3) one count of unlawful use of a firearm in violation of Title 18, United States Code, Section 924(c) (Count Five). These charges are based on the defendant's participation in an armed robbery of a restaurant owner in Brooklyn on September 28, 2009. The defendant is also charged with being a felon in possession of ammunition (Count Six). This charge arose from ammunition that was recovered from the defendant's apartment upon his arrest in December 2010. By written motion dated February 14, 2011, the defendant seeks <u>inter alia</u>, to suppress a witness's identification.[1]

On June 22, 2011, an evidentiary hearing with respect to the witness's identification of defendant Tuozzo was held by the Honorable Steven M. Gold. On July 28, 2011, Judge Gold issued a Report and Recommendation ("R&R") recommending that the

---

[1] The defendant also moved for severance from his co-defendant, Katosh Pantoliano, and for suppression of physical evidence seized from his home and a vehicle. Defendant Pantoliano's June 15, 2011 plea, however, rendered the severance motion moot. With respect to the motion to suppress evidence seized from the defendant's home and vehicle, the defendant subsequently withdrew that motion at the June 22, 2011 suppression hearing.

defendant's motion to suppress the identification be denied.  On September 4, 2011, the defendant filed his objections to Judge Gold's R&R ("Def.'s Obj.").

The same witness who identified Tuozzo also identified defendant Pantoliano, but the identification of Pantoliano was previously suppressed.  See R&R dated November 14, 2010.  In Judge Gold's prior Report and Recommendation with respect to defendant Pantoliano, Judge Gold found that the show-up identification procedure was unnecessarily suggestive, and that the identification itself was not independently reliable.  Given that Judge Gold's recommendation was subsequently adopted by the Court and the show-up procedure was identical with respect to the defendant Tuozzo, the sole issue at Tuozzo's suppression hearing was whether the identification of defendant Tuozzo was independently reliable.  As set forth below, the circumstances of the witness's identification of defendant Tuozzo were distinct from the identification of defendant Pantoliano, warranting an independent analysis of Tuozzo's identification.

The government submits that the Court should adopt Judge Gold's recommendation and deny the motion to suppress.  As Judge Gold found, the evidence demonstrates that the witness's identification of Tuozzo was independently reliable given that the witness had two opportunities to view Tuozzo during the robbery and recognized Tuozzo from Tuozzo having previously been a patron of the witness's place of business.  Accordingly,

because the witness had ample opportunity to view Tuozzo and recognized him from having seen him before, the identification was independently reliable.

For the reasons set forth more fully below, the defendant's objections to the R&R are without merit. Accordingly, the government respectfully asks this Court to reject the defendant's objections, to adopt Judge Gold's recommendations and to deny the defendant's motion in its entirety.

## STATEMENT OF FACTS

During the June 22, 2011 hearing, the government elicited testimony from Special Agent Ayesha Winston, which established the following facts:[2] Between approximately 8:00 and 8:30 p.m. on September 28, 2009, the son of the owner of a restaurant (the "victim") walked out of his place of business with the night's earnings in cash and headed to his car on Ovington Avenue in Brooklyn. Tr. 9. As the victim got closer to his car, he saw a man (the "robber") crossing the street and coming towards him. Tr. 10. The robber then pulled something up over half of his face and walked towards the victim with a gun in his hand. Id. As the robber approached the victim he said, "give me the fucking knot." Id. The victim gave the robber

---

[2] "Tr." refers to the transcript of the June 22, 2011 hearing.

$1,080, and the robber then turned around, walked away and discharged the firearm. Id. At that time, approximately 8:31 p.m., someone called 911 and, shortly thereafter at approximately 8:34 p.m., the police arrived at the scene. Tr. 11.

Detective Soto, a Spanish-speaking detective with the New York City Police Department ("NYPD"), interviewed an eye-witness who was present near the scene of the robbery (the "witness"). Tr. 12. The witness, who only speaks Spanish, told Detective Soto that he works at a juice bar on Third Avenue, and while he was taking the garbage out, he saw a car parked at the curb in front of him. Tr. 12, 14. The witness saw a man sitting in the driver's seat of the car who he recognized as a patron of the juice bar. Tr. 12. Although it was evening, the busy street was well-lit with street lamps and other business's lights. Tr. 16.

After the witness saw the driver of the parked car, he went back inside to collect more garbage. Tr. 12. When the witness heard what he described as a shot or a firecracker, he came back outside and saw another man wearing a gray hooded sweatshirt and carrying a gun. Id. That man entered the same car that was still parked by the curb. Id. The witness saw the driver again, who he again recognized as being a patron of the juice bar. Tr. 12-13. At that point, the witness wrote down the entire license

4

plate number of the car (the "getaway car") as it drove away. Tr. 15.

When the responding New York City Police Department ("NYPD") detectives interviewed the witness, he provided the car's full license plate number to them.  Tr. 15.  Based on that information, NYPD officers and detectives located the owner of the getaway car.  Id.  The car owner told the officers that he had lent his car to the defendant Tuozzo and provided Tuozzo's address.  Tr. 16.  Thereafter, NYPD Officers went to Tuozzo's residence on Battery Avenue in Brooklyn.  Tr. 16.  Upon their arrival, they located the getaway car parked near Tuozzo's home with no one inside.  Tr. 17.  Two other NYPD officers drove further down Battery Avenue, a dead-end street, and found defendants Tuozzo and Pantoliano.  Tr. 17-18.  The officers saw one of them try to hide behind a car.  Tr. 18.  The two individuals emerged when they were told over the loud speaker to show themselves, and they produced identification.  Id.  The officers recognized the name "Tuozzo" as the individual to whom the car owner stated that he had lent his car.  Tr. Id.  At 9:23 p.m., approximately 52 minute after the robbery, The officers radioed the detectives and stated that they had stopped two individuals.  Tr. 19, 47.

The detectives then brought the victim and the witness to Battery Avenue where the getaway car was located and where the

defendants were stopped. Tr. 20. The victim and the witness were together in the back seat of a police car. Tr. 21. Detective Soto rolled down the window and asked the witness in Spanish if he recognized the two men who were standing side-by-side. Tr. 22. Neither of the men were in handcuffs. Tr. 21. The street was reasonably well-lit with street lamps and lights from surrounding residences. Tr. 22. The witness identified Tuozzo without hesitation as being the driver of the car, and told Detective Soto that he also recognized him from being a patron in the juice shop where the witness worked. Tr. 22-23. Detective Soto remembered the witness's identification being strong because he both recognized Tuozzo as the driver of the getaway car, and as someone he had seen before. Tr. 23.

Following the identification of Tuozzo, the defendants were placed under arrest and searched. Tr. 23. The officers found $730 on Tuozzo's person, and $344 on Pantoliano's person. Tr. Id. This total differed from the amount reported stolen during the robbery by only $16. Tr. 24. The officers also searched the vehicle and recovered three masks inside. Id.

Shortly after the defendants were arrested, the witness was served with a Kings County Grand Jury subpoena. Id. After being served with a subpoena, the witness recanted his identification of Tuozzo. Id. Subsequently, Agent Winston interviewed the witness who again said that the detectives had

6

made a mistake -- that he only recognized Tuozzo as being a patron of the juice shop and had not seen the driver's face. Tr. 25. On August 31, 2010, however, the witness admitted to Agent Winston that he had seen the driver's face and also recognized the driver as being a patron from the juice shop, which was consistent with his initial statement to the police officers. Tr. 25, 26. The witness further explained that he had recanted because he became frightened when two individuals approached him a day or two after the robbery. Tr. 25. The witness was also frightened because he thought that defendant Tuozzo would be in jail after the robbery, but subsequently saw him again in the juice shop. Tr. 26.

ARGUMENT

I.  STANDARD OF REVIEW

With respect to a dispositive motion to suppress evidence in a criminal trial, a magistrate judge is required to submit a report and recommendation to the district court. See 28 U.S.C. § 636(b)(1)(A-C); Fed. R. Crim. P. 59(b), and the district court must then make a de novo determination of those portions of the magistrate judge's report to which a litigant has filed an objection. See 28 U.S.C. § 636(b)(1)(c); Fed. R. Crim. P. 59(b)(3); see also United States v. Padilla, No. 06-CR-824 (NGG), 2007 WL 1958894, at *1 (E.D.N.Y. June 29, 2007). "This de novo review neither requires the district court to 'rehear the

contested testimony' nor 'conduct a new hearing on contested issues,'" and permits "'whatever reliance a district judge, in the exercise of sound judicial discretion, [chooses] to place on the magistrate's proposed findings and recommendations.'" United States v. Houston, No. 08-CR-0457 (BMC), 2009 WL 2876671, at *1 (E.D.N.Y. Sept. 8, 2009) (quoting United States v. Raddatz, 447 U.S. 667, 674-75, 676 (1980)).

The determinations of a magistrate judge with respect to the credibility of a witness, however, are given a greater degree of deference because the magistrate was the judicial officer who in fact heard the live testimony. See United States v. Lucky, 569 F.3d 101, 106 (2d Cir. 2009) (noting "special deference" owed to findings based on witness credibility); Cullen v. United States, 194 F.3d 401, 406 (2d Cir. 1999) ("When the constitutional rights of a criminal defendant are involved, 'the district judge should not enter an order inconsistent with the credibility choices made by the magistrate without personally hearing the live testimony of the witnesses whose testimony is

8

determinative.'") (quoting Grassia v. Scully, 892 F.2d 16, 19-20 (2d Cir. 1989)).

II. APPLICABLE LAW

In determining whether the identification of Tuozzo was independently reliable, the Court must consider various factors, including: (1) the opportunity of the witness to view the criminal at the time of the crime; (2) the witness's degree of attention; (3) the accuracy of the witness's prior description of the criminal; (4) the level of certainty demonstrated by the witness at the confrontation; and (5) the length of time between the crime and the confrontation. Id. at 199-200 (the "Biggers factors"). A good or poor rating with respect to any one of these factors is generally not dispositive. United States v. Mohammed, 27 F.3d 815, 821 (2d Cir. 1994) (citing Concepcion, 983 F.2d at 378); United States v. Butler, 970 F.2d 1017, 1021 (2d Cir. 1992) (identification independently reliable even though suspects were brought to victim who was sitting in a police car).

III. JUDGE GOLD'S RECOMMENDATION TO DENY THE DEFENDANT'S MOTION TO SUPPRESS THE WITNESS'S IDENTIFICATION SHOULD BE ADOPTED

The defendant objects to Judge Gold's determination that the identification of Tuozzo was independently reliable and argues that the witness's identification was not sufficiently certain. The defendant, however, focuses exclusively on certain portions of the cross-examination of Agent Winston, and entirely

9

ignores the Bigger's factors that demonstrate the reliability of the identification of Tuozzo.

First, as Judge Gold found, the witness had ample opportunity to see the getaway driver at the time of the crime. The witness saw the driver at two separate times -- first when he brought the garbage out to the curb where the car was parked, and again after hearing a gun fired. R&R at 4. While the defendant argues that Agent Winston conceded that it was dark when the witness saw the driver, the defendant ignores the testimony by Agent Winston that the area where the car was parked was busy and well-lit. Def.'s Obj. at 3; Tr. 16. Indeed, the area was well-lit enough for the witness to obtain and record the entire license plate number of the car. Tr. 15.

While Judge Gold acknowledged that the witness did not provide a physical description of the driver, a point that the defendant argues is dispositive, Judge Gold gave this factor "little weight in light of the fact that the witness recognized the driver from the juice bar where the witness worked." R&R at 4-5. Moreover, because the defendant Tuozzo was the driver of the car and the witness provided a license plate number to the police, a physical description of the getaway driver was not crucial to the investigation.

To support his argument that the lack of a physical description of the driver renders the entire identification

10

unreliable, the defendant cites Jackson v. Fogg, 589 F.2d 108 (2d Cir. 1998). Jackson, however, is entirely distinguishable from the instant case. In Jackson, the defendant was identified by four eyewitnesses who, unlike the witness in the instant case, were witnesses to the actual crime. Jackson, 589 F.2d at 109. There, the defendant Jackson entered an establishment and announced, "This is a stickup." Id. At that time, the 40 to 60 customers scrambled for cover and the defendant Jackson fired a shot that mortally wounded a bartender. Id. Of the 40 to 60 customers, four eye-witnesses testified that they had never seen the gunman before the night of the shooting and that they observed him only in the few seconds it took them to turn away and scramble for cover. Id. The witnesses eventually participated in a lineup, and all but one witness saw the defendant walking with an officer before the line-up. Id. at 110. In holding that the identifications were not independently reliable, the court found that (1) the witnesses did not have a good opportunity to view the gunman, (2) they had little motivation to study the gunman's face and every reason to turn and run, (3) there was no evidence of how the witnesses initially described the gunman, (4) the witnesses appeared to have displayed varying degrees of certainty at the station house when they identified the defendant and (5) a considerable amount of

11

time (6 months) had passed between the crime and the confrontation.  Id. at 111.

In contrast, in the instant case, the witness had seen the defendant Tuozzo on prior occasions, a factor that the Jackson court found significant.  In addition, the witness had two opportunities to view Tuozzo, which were both longer than the few seconds that the witnesses viewed the gunman in Jackson.  Furthermore, the witness here was initially able to view Tuozzo as he was leisurely taking out the garbage, in striking contrast to the witnesses in Jackson who viewed the defendant for a few seconds as they were scrambling for cover from him and his gun.  The witness here also had sufficient time during the second sighting of the defendant to record the entire license plate number.  And unlike the Jackson witnesses, the witness in the present case displayed complete certainty when he identified Tuozzo, which occurred just over an hour after the robbery as compared to the six month lapse that existed in Jackson.  While the Jackson court found that the lack of an initial description of the gunman was a factor, none of the other factors that support the reliability of the instant identification existed in Jackson.

Judge Gold also found that the witness's "unhesitating and confident" identification of Tuozzo further supported its reliability.  R&R at 5.  Agent Winston testified that Detective

Soto remembered the witness's identification as confident because he both recognized Tuozzo as the driver of the getaway car, and as someone he had seen before. Tr. 23. While the defendant argues that the fact that the witness recognized Tuozzo as someone he had seen before was not contained in the NYPD officers' reports, Agent Winston testified that the officers told her that, on the night of the robbery, the witness informed them that he recognized the driver as a juice bar customer. R&R at 5. In addition, the witness told Agent Winston that he recognized the getaway driver as a customer of the juice bar during his August 31, 2010 interview. Id. at 5-6. Indeed, Agent Winston's report includes a statement by the witness that he saw the driver's face -- "the guy with the light hair who [the witness] had seen in the neighborhood." Id. at 6. Accordingly, not only is the fact that the witness recognized the driver contained in Agent Winston's report, but a brief description of Tuozzo was also included.

With respect to the defendant's argument concerning the "varying" times provided in the NYPD reports about the length of time between the crime and the show-up, the evidence reveals that the total time between the initial 911 call and the NYPD stop of Tuozzo and Pantoliano was 52 minutes, and that the witness and victim arrived shortly thereafter. Def's. Obj. at 6; Tr. 11, 19, 47. The 911 call was documented electronically at 8:31 p.m., and

13

the Sprint report, which is also electronic, shows that the suspects were stopped and identified by the NYPD officers at 9:23 p.m. Tr. at 11, 47. Accordingly, while one of the NYPD reports incorrectly noted the time, there is no dispute that the computerized recording of the 911 call and the Sprint report are correct, thus confirming that the show-up identification occurred approximately an hour after the robbery.

Furthermore, the defendant's argument concerning the fact that the witness and victim were in the car together prior to and during the lineup is irrelevant, as it goes to the suggestiveness of the show-up procedure, and not to whether the identification was independently reliable. Def.'s Obj. at 6. Likewise, the placement of the defendants during the show-up and the fact that Pantoliano was wearing clothes that matched the description that the victim and witness had provided are also relevant only to the suggestiveness of the identification procedure and not to whether the identification of Tuozzo was independently reliable.

Finally, the witness was never, as the defendant argues, uncertain of his identification of Tuozzo. Def.'s Obj. at 8. Rather, the witness was intimated and frightened, and therefore recanted. Tr. 25. Indeed, the witness admitted to Agent Winston that he recanted his statement because he was frightened, and not because he became uncertain. Tr. 26, 26.

15

CONCLUSION

For the reasons set forth above, the government respectfully asks the Court to reject the defendant's objections, to adopt Judge Gold's R&R, and to deny the defendant's motions in its entirety.

Dated:   Brooklyn, New York
         September 21, 2010

                                        Respectfully submitted,

                                        LORETTA E. LYNCH
                                        United States Attorney

                          By:      /s/
                                        Celia A. Cohen
                                        Assistant U.S. Attorney
                                        (718) 254-6147

cc:   James Froccaro, Esq. (via ECF and by mail)
      Clerk of Court (SJ)(via ECF)