

**U.S. Department of Justice**

*United States Attorney*
*Eastern District of New York*

BWB:DMP
F.#2010R00123

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

May 18, 2012

<u>Via ECF and HAND DELIVERY</u>

The Honorable Sterling Johnson, Jr.
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

>  Re:  <u>United States v. Anthony Tuozzo</u>
>        <u>Criminal Docket No. 10-68 (SJ)</u>

Dear Judge Johnson:

      On November 29, 2011, the defendant Anthony Tuozzo ("Tuozzo") pleaded guilty, pursuant to a plea agreement, to a Hobbs Act robbery conspiracy, in violation of Title 18, United States Code, Section 1951(a). The defendant is scheduled to be sentenced on May 24, 2012. In a sentencing submission filed on May 5, 2012, Tuozzo challenges the Guidelines calculation set forth in the Pre-Sentence Investigation Report ("PSR"), arguing that a five-level enhancement for brandishing a firearm is more appropriate than a seven-level enhancement for discharging a firearm. Tuozzo also seeks a below-Guidelines sentence to avoid a sentencing disparity with his co-defendant Katosh Pantoliano and because of (a) his limited role in the offense as the get-away driver, (b) the "overstated" criminal history category, (c) his personal history, and (d) extraordinary family circumstances. The government respectfully submits this letter in response to Tuozzo's May 5, 2012 letter.

**I.  Background**

      As set forth in the PSR, Tuozzo and Pantoliano robbed a family-owned restaurant in Brooklyn, New York, on September 28, 2009. At approximately 8:30 p.m., the son of the owner of the restaurant walked out of the restaurant carrying $1,080, the proceeds from the restaurant that day. Pantoliano, wearing a mask, approached the victim, brandished a firearm and demanded the money. The victim handed over the $1,080. Pantoliano discharged the firearm while fleeing the scene. He then got into

a Honda Accord, driven by Tuozzo, and the two of them sped away. (PSR ¶¶ 3-4.)

A witness wrote down the license plate of the Honda Accord and provided it to NYPD officers. The owner of the vehicle told officers that he had lent the car to Tuozzo that evening. Officers subsequently located the Honda Accord parked near Tuozzo's residence in Brooklyn. Upon spotting Tuozzo and Pantoliano walking together in the area, officers detained them. Both the victim and the witness subsequently identified Pantoliano as the robber and Tuozzo as the getaway driver. Officers recovered $334 from Pantoliano and $725 from Tuozzo. In addition, officers found three masks in the Honda Accord. (PSR ¶ 4.)

At the time of Tuozzo's arrest by federal agents, ATF agents recovered from Tuozzo's residence a gun box containing two magazines for two different firearms and six rounds of ammunition. Although no firearm was recovered from the apartment, a check of the serial number on the gun box revealed that it was for a gun that was stolen in Los Angeles, California, in August 2010. Agents also seized from Tuozzo's apartment thirteen vials containing trace amounts of anabolic steroids, a syringe, a small amount of a substance believed to be marijuana, and several digital scales. (PSR ¶ 6.)

## II. Guidelines Calculation

The government submits that the following Guidelines calculation, which is the same calculation set forth in the PSR and different in one respect than the Guidelines calculation set forth in the plea agreement between the government and the defendant ("Plea Agreement"), is the appropriate Guidelines calculation.

| | |
|---|---:|
| Base Offense Level (U.S.S.G. § 2B3.1(a)) | 20 |
| Plus: Brandishing of Firearm (U.S.S.G. § 2B3.1(b)(2)(A)) | +7 |
| Less: Acceptance of responsibility (U.S.S.G. §§ 3E1.1(a), 3E1.1(b)) | −3 |
| Total: | 24 |

Thus, the government submits that the total offense level is a level 24, which, based on a criminal history category of III, carries a range of imprisonment of 63 to 78 months.

While the Plea Agreement contained a five-level enhancement for brandishing a firearm rather than the seven-level enhancement for discharging a firearm set forth above and included in the PSR, the government believes that the Probation Department correctly calculated the applicable Guidelines range. Nonetheless, in light of the Plea Agreement, and as set forth in more detail below,[1] the government does not seek a sentence outside of the range contemplated in the Plea Agreement, namely, 51 to 63 months.

**III.  Discussion**

As an initial matter, the government agrees with Tuozzo's argument that the court should avoid any sentencing disparities between Tuozzo and his co-defendant Pantoliano. (Def. Ltr. at 14-16.)  Although Pantoliano's PSR calculated a seven-level enhancement for discharge of a firearm, the court sentenced Pantoliano within the range set forth in his plea agreement with the government, which contained only a five-level enhancement for brandishing a firearm.  Like Pantoliano's plea agreement, Tuozzo's plea agreement also contains only the five-level enhancement for brandishing rather than the seven-level enhancement for discharging a firearm.  Thus, the government submits that it would be appropriate to sentence Tuozzo within the 51 to 63 month range set forth in the Plea Agreement.

---

[1]  The Plea Agreement provides:

> The Guidelines estimate set forth in [the Plea Agreement] is not binding on the Office, the Probation Department or the Court.  If the Guidelines offense level advocated by the Office, or determined by the Probation Department or the Court, is, for any reason, including an error in the estimate, different from the estimate, the defendant will not be entitled to withdraw the plea and the government will not be deemed to have breached this agreement.

Plea Agreement ¶ 3.

However, the government disagrees with the remaining arguments advanced by Tuozzo for why he should receive a below-Guidelines sentence.  We address these arguments below.

### A.  The Nature of the Offense Does Not Warrant a Departure

The defendant argues that his limited role in the offense – specifically that he was the getaway driver, did not possess a firearm, and received less of the proceeds of the crime – warrants a departure.  (Def. Ltr. at 5.)  The government does not believe that the defendant's role in the crime warrants any departure.  As the defendant acknowledged in pleading guilty, he went to the location of the robbery knowing that a robbery was going to be committed and helped commit that robbery by driving away the person who robbed the victim.  (Plea Tr. at 22.)  The defendant may not have held the firearm or committed the robbery, but he is every bit as culpable as the individual who did.  In addition, the government disputes Tuozzo's assertion that he was to share in "significantly less" of the proceeds than Pantoliano.  When the two robbers were arrested, Tuozzo actually had double the amount of money as Pantoliano ($725 to Pantoliano's $334).

### B.  Tuozzo's Criminal History Category Is Not Overstated

The defendant argues that the criminal history category over-represents the seriousness of his criminal history and that, as a result, a departure is warranted under Guidelines § 4A1.3(b)(1) or a variance is warranted pursuant to 18 U.S.C. § 3553.  (Def. Ltr. at 9-11.)

The Second Circuit has recognized that district judges have the discretion to depart horizontally upon a determination that the criminal history category "overstates the seriousness of the defendant's prior offenses or his likelihood of recidivism." United States v. Rivers, 50 F.3d 1126, 1130-31 (2d Cir. 1995) (holding that defendant can receive a downward departure "to the extent thought appropriate, to reduce either the criminal history category or the offense level, or both"); United States v. Mishoe, 241 F.3d 214, 219 (2d Cir. 2001) (in a career offender case, a horizontal departure in criminal history category could be warranted based on an "individualized consideration" of factors relevant to an assessment of whether Category VI "'significantly overrepresents the seriousness of [the] defendant's criminal history or the likelihood that the defendant will commit further crimes.").

As an initial matter, we note that the defendant does not dispute the Probation Department's calculations that assign

4

him to criminal history category III. The defendant received two criminal history points for a 2007 conviction for Criminal Possession of a Loaded Firearm in the Third Degree in Kings County Supreme Court, for which he was sentenced to one year in custody; one criminal history point for a 2009 conviction for Criminal Possession of a Weapon in the Fourth Degree in Kings County Supreme Court, for which he was sentenced to time served (one day); and one criminal history point for a 2005 conviction for Unlawful Possession of Marijuana in Richmond County Criminal Court, for which he received a conditional discharge. These four criminal history points place the defendant in criminal history category III. Although the defendant contends that the latter conviction for a personal use quantity of marijuana is "arguably subject to exclusion from the [criminal history] calculation," he properly concedes that the conditional discharge is required to be counted in determining the criminal history category. (Def. Ltr. at 9.)

Placement in criminal history category III is apt. The defendant's prior crimes, as well as his overall criminal history, demonstrate that his criminal record is serious and the defendant is likely to commit additional crimes. Indeed, this conviction represents the defendant's <u>tenth</u> arrest in the last ten years. (PSR ¶¶ 21-42). The defendant was arrested in 2002 for knowingly possessing a document which falsely purported to be a driver's license. (PSR ¶ 21.) He was arrested in 2004 for using a driver's license belonging to a different individual. (PSR ¶ 23.) He failed to pay the fine imposed as a result of that arrest. (PSR ¶ 24.) In 2005, as noted above, the defendant was arrested for unlawful possession of marijuana. (PSR ¶ 25.) Notably, the arrest report also indicates that he had a firearm at the time of his arrest. (PSR ¶ 26.) He failed to show up in court as required, and a bench warrant was issued for his arrest. (PSR ¶ 26.) In 2006, as noted above, he was arrested for criminal possession of a loaded firearm and ammunition. (PSR ¶¶ 27-28.) In addition, NYPD officers also recovered crack cocaine and marijuana from the defendant. (PSR ¶ 28.)

In 2007, the defendant was arrested for criminal sale of a controlled substance. He was accused in the arrest report of selling ecstasy and conspiring with others to sell ecstasy. (PSR ¶¶ 39-40.) In 2008, the defendant was arrested a second time for unlawful possession of marijuana. (PSR ¶ 41.) In 2009, as noted above, the defendant was arrested for criminal possession of a weapon, specifically a gravity knife. (PSR ¶¶ 31-32.) At the time of the arrest, NYPD officers smelled marijuana in the defendant's car and ultimately found marijuana in a ziplock bag in the car. (PSR ¶ 32.) In 2010, the defendant

5

was arrested for assault after slapping, pushing, choking and biting a female victim.  (PSR ¶¶ 36-37.)  Finally, when the defendant was arrested on the instant offense in 2010, he had a gun box containing two magazines for two different firearms and six rounds of ammunition in his apartment, as well as small amounts of a substance believed to be marijuana.  (PSR ¶ 6.)

Thus, in the last ten years, the defendant has been arrested each year for some offense.  And although the offenses range in severity from the marijuana possession to the firearm possession, it seems clear that the offenses have increased in severity during that time frame.  Since December 2010, the defendant has been in federal custody and has not been able to commit further crimes.

On this record, criminal history category III does not "'significantly overrepresent[] the seriousness of [the] defendant's criminal history or the likelihood that the defendant will commit further crimes.'"  Mishoe, 241 F.3d at 219 (quoting Guidelines § 4A1.3).  In short, the defendant earned his assignment to criminal history category III by virtue of his pattern of criminal activity.

### C. The Likelihood of Recidivism Is Not Remote

The defendant argues that his history and characteristics show that the likelihood of recidivism is remote.  (Def. Let. at 6-9.)  Specifically, he contends that the time period during which he committed his crimes occurred during a traumatic period in his life and upbringing, during which he received mental health counseling.  He argues that his education (graduating high school in 2001, studying business management in 2004-05) and employment history from 2002 to 2009 show that his prospects for employment are good.  As a result of this promise for a better future, he argues that his risk of recidivism is remote.  (Def. Ltr. at 6-9.)

While there are a lot of positives in the defendant's education and employment history and in the support of his family and friends, the Court should reject the defendant's contention that these factors suggest a diminished risk of recidivism.  Tuozzo's history of education, employment and family support did not prevent him from committing the instant offense in the first place, and there is no reason to believe that they would prevent him from committing further offenses absent the deterrent effect of an appropriate sentence.  Indeed, the defendant's lengthy criminal history, discussed above, confirms the need for such a deterrent sentence.

### D. Tuozzo's Family Circumstances Are Not Extraordinary

Finally, the defendant argues that his extraordinary family circumstances warrant a below-Guidelines sentence. The defendant argues that his mother, who is the primary provider for his family, is HIV-positive, that his step-father is disabled, and that his sister is not in a position to contribute financially. In contrast, however, the defendant argues that he can provide financial and emotional support to his family. (Def. Let. at 11-14.)

Although advisory, the pertinent Guidelines policy statement provides that "family ties and responsibilities are not ordinarily relevant" when fashioning a defendant's sentence. U.S.S.G. § 5H1.6. The Second Circuit has noted that separation from family members is "inherent in the punishment of incarceration." United States v. Tejeda, 146 F.3d 84, 87 (2d Cir. 1998) (per curiam); see also United States v. Johnson, 964 F.2d 124, 128 (2d Cir. 1992) ("Disruption of the defendant's life, and the concomitant difficulties for those who depend on the defendant, are inherent in the punishment of incarceration.").

The cases interpreting the Guidelines explain that family ties and relationships should be taken into account only when they are truly "extraordinary." See United States v. Cutler, 520 F.3d 136, 164-65 (2d Cir. 2008) (analyzing the relevance of family ties and responsibilities in determining whether a sentence should be outside the applicable Guidelines range)[2]; United States v. Faria, 161 F.3d 761, 763 (2d Cir. 1998); United States v. Galante, 111 F.3d 1029, 1033 (2d Cir. 1997). Absent extraordinary circumstances, courts are discouraged from basing sentences on familial events in the defendant's life. See Galante, 111 F.3d at 1034.

Exceptional circumstances are found only rarely. In the few cases in which the Second Circuit has affirmed a departure from the Guidelines range for family circumstance, it has done so where the defendant provided substantial support for his two children, his wife could not provide such support because

---

[2] In United States v. Cavera, 550 F.3d 180, 189 (2d Cir. 2008), the Second Circuit "receded from" the standard of review of a district court's sentencing decisions that was implied in Cutler. The Second Circuit did not, however, question the result reached in Cutler or its analysis of the consideration of family circumstances at sentencing. See Cavera, 550 F.3d at 189 n.7.

she spoke limited English, and his elderly parents were likely to require physical and financial assistance in the near future, Galante, 111 F.3d at 1035; where the defendant was the sole supporter of four children who were age six or younger, Johnson, 964 F.2d at 129-30; and, where the defendant supported his wife, two daughters, his disabled father, and his grandmother, and where his disabled father relied on the defendant to get in and out of his wheelchair, United States v. Alba, 933 F.2d 1117, 1122 (2d Cir. 1991).

Although the defendant's predicament and the consequence to his family is unfortunate, the government does not believe that the circumstances described in the PSR are significantly different from those experienced by the families of hundreds or even thousands of other prisoners currently incarcerated in the federal system.  Here, unlike the cases that defendant cites in which such departures have been granted, there are no young children who require financial support.  And the defendant's mother, although HIV-positive, is still able to provide for the defendant's family.  The defendant's argument of "extraordinary family circumstances" is based in part on the argument that his mother, though able to provide for her family now, is "likely if not probable" to suffer a setback.  The government respectfully submits that the court should not base a departure or variance on the possibility of a future need for the defendant to provide financial support for his family.

**IV.   Conclusion**

For the foregoing reasons, the government respectfully submits that the Court should impose a sentence within the 51 to 63 month Guideline range set forth in the Plea Agreement.

Respectfully submitted,

LORETTA E. LYNCH
United States Attorney

By:   _____/s/_____
Douglas M. Pravda
Assistant U.S. Attorney
(718) 254-6268

cc:  Alan Nelson, Esq., counsel to the defendant
     Darcy A. Zavatsky, Senior U.S. Probation Officer

8